UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL LEON POWELL,

                Plaintiff,                Case No. 1:17-cv-82

v.                                Honorable Janet T. Neff

HEIDI WASHINGTON et al.,

                Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on grounds of immunity and for failure to state a claim.

**Factual Allegations**

Plaintiff Michael Leon Powell is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF ) in Manistee, Michigan. The events of which he complains occurred at ECF and at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, beginning on August 13, 2016, and continuing at least until January 18, 2017, the date he signed his complaint.  (Compl., ECF No. 1, PageID.20.)

Plaintiff sues several MDOC officials: Director Heidi Washington; Deputy Director K. McKee; Assistant Mental Health Director Thomas Osier; and Hearings Officer Unknown Theut. Plaintiff sues several MDOC employees from URF: Warden Jeffrey Woods; Deputy Wardens Unknown Isard and Unknown Miller; Resident Unit Manager Unknown LaLounde; Psychologist Case Manager Unknown Chapman; and Area Resident Unit Supervisor Unknown Dunton.  Plaintiff also sues several MDOC employees from ECF: Warden Thomas Mackie; Deputy Wardens Robert Sharp and Unknown Ball; Mental Health Unit Chief Brian Majercyzk; Psychologist Case Managers Carol Kenison and Unknown Mucha; Resident Unit Manager Unknown Thomas; Area Resident Unit Supervisor Larry Weaver; maintenance staff members Unknown Singleton and Unknown Bush; and Unit Officers Unknown Rademaker, Unknown Shelton, Unknown Carney, and Unknown Blow. Plaintiff adds a catch-all category of ECF, URF, and MDOC employees who are unknown but were present at the time Plaintiff's constitutional rights were violated.  Each Defendant is sued in his or her individual and official capacity.

All of Plaintiff's claims arise out of a misconduct ticket written against him by Sergeant W. Henderson on August 13, 2016, while Plaintiff was incarcerated at URF.  Plaintiff attached the misconduct report to his complaint.  (Attach. A, ECF No. 1-1, PageID.24.)  The report

- 2 -

charges Plaintiff with Fighting and Possession of a Weapon.  (*Id*.)  Sergeant Henderson described

the violation as follows:

> On the above date and time, I saw prisoner Powell 484234 doing a slashing motion
> with his right hand at prisoner Jackson 622337 prisoner Jackson was throwing closed
> fist punches to prisoner Powell's head and torso a 5 3/4 piece of sharpened steel was
> recovered.  Prisoner Jackson recived [sic] 3 stab wounds.  ID by MDOC ID card.

(*Id*.)

Plaintiff's misconduct hearing was conducted by Defendant Theut on August 22,

2016.  Plaintiff attaches the hearing report to his complaint and refers the Court to the misconduct

report.  Because his allegations regarding the content of the report are belied by the report itself,

careful examination of the report is warranted.

The report identifies the charges as Fighting and Possession of a Weapon.  (Attach.

A, ECF No. 1-1, PageID.23.)   The report indicates that the misconduct report and hearing

investigation were read to and discussed with Plaintiff.  (*Id*.)  In the section of the report titled

"Evidence/Statements in Addition to Misconduct Report" Defendant Theut wrote:

> Prisoner is present for the hearing and the misconduct report is reviewed with a
> statement from prisoner Powell 1 page, a statement regarding the video 1 page,
> prisoner is informed that the he[a]ring officer has viewed the vi[d]eo, a memo 1
> page, a statement from Sgt. Henderson 1 page, four pictures 4 pages, a contraband
> removal record 1 page, a misconduct 1 page, a refusal 1 page, and a screening [form]
> 1 page. Prisoner states he is guilty of fighting but not guilty of the possession of a
> weapon and did not stab him and he had it [presumably the stab wounds] before he
> came out and declines further statement. A not guilty plea is entered on his behalf.
> No further evidence is requested or is necessary. Prisoner is informed of the decision
> and told that a copy of the hearing report would be delivered to him.

(*Id*.)  The report continues:

> Findings: The video and video statement do support the charge and shows prisoner
> Powell making stabbing motions toward prisoner Jackson and are marked
> confidential so that the capabilities of the camera will not be known.

Reasons for Findings

- 3 -

> Pursuant to PD 03.03.105 Fighting: Physical confrontation between two or more persons including a swing and miss done in anger or with intent to injure...... Possession of A Weapon: Unauthorized Possession of an item designed or intended to be used to cause or threaten physical injury to another person, unauthorized possession of a piece, strip, or chunk of any hard material which could be used as a weapon or in the creation of a weapon. Prisoner Powell had a physical confrontation with prisoner Jackson and was observed doing a slashing motion with his right hand several times at prisoner Jackson. Prisoner Jackson had puncture wounds on his body and nose. I find that prisoner Powell did intend to injure prisoner Jackson and I find that prisoner Powell was in possession of a weapon and did intend it to be used to cause or threaten physical injury to another person. I order prisoner Powell to pay the State of Michigan 2,374.87 for the cost of prisoner Jackson's injuries. Prisoner Powell is not believed in his statement that he was not stabbing prisoner Jackson and he had these wounds before because he is observed on video making slashing motions with his right hand towards prisoner Jackson, the weapon was found 3 to 4 feet from prisoner Powell who started the altercation and prisoner Jackson had bleeding stab wounds on his body from this incident. The reporting officer is clear and consistent in his statements and found credib[l]e. Charges upheld. The weapon is to be turned over to the Michigan State Police pursuant to PD 04.07.112 JJ.

(*Id.*)  Defendant Theut found Plaintiff guilty of Reporting Code 014, Fighting, and Reporting Code 029, Possession of a Weapon.  *See* MDOC Policy Directive Attachment 03.03.105A.  Defendant Theut imposed sanctions of 20 days of detention, 60 days' loss of privileges, and restitution in the amount of $2,374.87.  (Attach. A, ECF No. 1-1, PageID.23.)

Plaintiff alleges that he was denied appropriate notice that he was being charged with a "stabbing another inmate" misconduct.  (Compl., ECF No. 1, PageID.5.)  He claims he was not provided the opportunity to gather evidence and documents or produce witnesses to a "stabbing" misconduct.  (*Id.*)  He further claims that Defendant Theut found Plaintiff guilty of the charge of "Assault Resulting in Serious Physical Injury (003)."  (*Id.*)

As a result of the misconduct, Plaintiff was placed in segregation. He remained in segregation at URF until he was transferred to segregation at ECF on October 4, 2016.  He was transferred back to URF on November 1, 2016.  He stayed in temporary segregation there until

- 4 -

completion of criminal proceedings relating to the possession of a weapon charge were complete. On November 15, 2016, Plaintiff was transferred back to segregation at ECF.  He remains in segregation at that facility.

Plaintiff alleges that he has psychological or psychiatric health problems and that the Defendants who played a role in classifying him to segregation and then keeping him there violated MDOC policy and were deliberately indifferent to his serious mental health needs.  Plaintiff alleges that the conditions in segregation represented significant and atypical deprivations including no running water from 12:00 a.m. to 6:30 a.m. from October 4 through November 1, 2016; no working cell light from November 15 to December 20, 2016; no new bed linen or towels; inadequate paper supply; no education, psychological, or vocational programming; no phone access; no interaction with other inmates; confined to cell for 23 hours a day; and limited recreation, only one hour a day in a small caged area.

Plaintiff contends that the deplorable conditions in segregation have resulted in suicidal thoughts, difficulty concentrating, agitation, depression, anxiety, difficulty sleeping, weight loss, and loss of appetite.  Although Plaintiff alleges that he has serious mental health needs, he does not specifically identify them.  He claims that the MDOC personnel have been deliberately indifferent to those needs, but his allegations reveal numerous instances over the six month period where he is talking to mental health professionals and he acknowledges he is receiving medications for his condition.

Throughout his complaint, Plaintiff contends that he has been held in segregation improperly because Defendants are reading his misconduct to be more serious than it really is. Plaintiff contends that his October 4 transfer to segregation at ECF was retaliatory for filing

- 5 -

grievances. He also contends that, when he was transferred back to segregation at ECF on November 15, it was retaliatory for filing grievances. Plaintiff claims that Defendants have violated MDOC policy directives in placing and keeping him in segregation.

Plaintiff contends that all Defendants have violated Plaintiff's rights to due process of law under the Fourteenth Amendment by subjecting him to atypical and significant hardship in administrative segregation. (Compl., ECF No. 1, PageID.19.)

Plaintiff contends that Defendant Theut violated Plaintiff's right to due process by finding him guilty of misconduct, ordering him to pay restitution, serve 20 days' detention, and 60 days' loss of privileges, without 24 hour notice of the charges. (*Id.*)

Plaintiff contends that Defendants Wood, Isard, Miller, LaLounde, and Dunton retaliated against Plaintiff for filing grievances, thereby violating the First Amendment, by transferring Plaintiff to long term segregation. (*Id.*)

Plaintiff contends that Defendants Mackie, Sharp, Ball, Majercyzk, Kenison, Mucha, Thomas, Weaver, Singleton, Bush, Rademaker, and Shelton were deliberately indifferent to Plaintiff's need of life's minimal necessities and inflicted pain and suffering on Plaintiff in violation of the Eighth Amendment. (*Id.*)

Finally, Plaintiff contends that Defendants Washington, Osier, McKee, Wood, Mackie, Isard, Miller, Dunton, LaLounde, Thomas, Chapman, Majerczyk, Kenison, Mucha, Weaver, Ball, and Sharp were deliberately indifferent to Plaintiff's serious psychiatric needs in violation of the Eighth Amendment. (*Id.*)

Plaintiff asks the Court to award compensatory and punitive damages against each Defendant and to enjoin Defendants to provide Plaintiff a rehearing on the misconduct with

- 6 -

appropriate notice, to classify Plaintiff to general population, and to provide psychological programming while Plaintiff remains in segregation.

## Discussion

I.   Judicial Immunity

Plaintiff alleges that Defendant Theut is liable for his August 22, 2016, adjudication of Plaintiff's misconduct.  The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority.  *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255.  *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same).  Plaintiff's action fails because Defendant Theut is absolutely immune from suit for damages under the circumstances of this case.

Moreover, injunctive relief is not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012).  Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable.  Consequently, his claim for injunctive relief is barred.  *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v.*

*Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Defendants Washington, McKee, and Osier

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).  Plaintiff fails to even mention Defendants Washington, McKee, or Osier in the

factual allegations of his complaint.  Plaintiff identifies them at the beginning of the complaint and accuses them of deliberate indifference at the end of his complaint,[1] but he provides no allegations of fact that link these Defendants to the misconduct hearing, segregation or transfer decisions, retaliation, or deliberate indifference.  His allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

To the extent Plaintiff is attempting to impose liability on Defendants Washington, McKee, or Osier for acts perpetrated by other Defendants, he cannot prevail.  A plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability.  *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).  As the Sixth Circuit has repeatedly emphasized:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior.  There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).  Liability under § 1983 must be based on active unconstitutional

---

[1] Plaintiff includes Defendant Osier in a list of Defendants who failed to take actions to help Plaintiff, but he provides no facts to support the implicit claim that Defendant Osier was aware of Plaintiff's needs.  (Compl., ECF No. 1, PageID.16, ¶ 40.)

behavior and cannot be based upon "a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir.1998)).

Plaintiff has failed to state a claim against Defendants Washington, McKee, or Osier.

B.     Defendants Woods and Mackie

Plaintiff makes one factual allegation with respect to Defendant Woods: "Woods approved SCC's recommendation to transfer me to an alternate level 2 and documented his approval on my segregation behavior form." (Compl. ECF No. 1, PageID.7.) Nonetheless, Plaintiff contends that Defendant Woods violated Plaintiff's First Amendment rights by transferring Plaintiff to long term administrative segregation in retaliation for filing grievances and violated Plaintiff's Eighth Amendment rights by acting with deliberate indifference to Plaintiff's serious psychiatric needs. Where the only specific allegation regarding Defendant Woods is that he recommended Plaintiff's transfer to a more desirable security level, Plaintiff's conclusory allegations regarding Defendant Woods violation of Plaintiff's First and Eighth Amendment rights fail to state a claim.

Similarly, Plaintiff makes one factual allegation with respect to Defendant Mackie:

> On October 7, 2016, Warden Mackie and Deputy Warden Sharp walked through the unit. I informed Warden Mackie that the Chippewa SCC said that they were sending me to an alternate level 2. He asked to see my segregation behavior review form and I showed him. Mackie then told me that they will see how I adjust to their administrative segregation and then they will make a determination if they want me on their compound.

(Compl., ECF No. 1, PageID.8.) Plaintiff also states: "Warden Thomas Mackie response to my grievance complaints is cursory. He is grossly negligent in managing the people his responsible of supervising." (*Id.*, PageID.16.) Based on that foundation, Plaintiff claims that Defendant Mackie violated Plaintiff's Eighth Amendment rights by deliberate indifference to his serious psychiatric needs. Defendant Mackie's alleged inadequate response to a grievance or negligent supervision is

not active unconstitutional behavior.   Petitioner's allegation regarding his brief exchange with Defendant Mackie when he arrived at ECF also fails to demonstrate any unconstitutional behavior. Plaintiff has failed to state a claim against Defendant Mackie.

C.   <u>Plaintiff's due process rights</u>

1.   <u>Placement and retention in administrative segregation for a<br>few months does not implicate the Due Process Clause</u>

Plaintiff has been in segregation for roughly six months, since mid-August, 2016. He contends that placement in segregation for that duration is an atypical and significant deprivation that cannot constitutionally occur unless he is afforded due process.   Plaintiff is simply wrong.

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim."   *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The Supreme Court has long held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.   *See Meachum v. Fano,* 427 U.S. 215, 225 (1976).   In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause.   According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812

- 12 -

(6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter,* 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison

officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

2.      <u>Plaintiff was provided all the process that was due</u>

Plaintiff has failed to establish that his stay in administrative segregation is of a duration or nature sufficient to constitute an atypical and significant deprivation.  But, Plaintiff also claims he was deprived of property without due process when money was removed from his trust account in satisfaction of the restitution order.   Even if Plaintiff's placement and retention in administrative segregation were a deprivation of liberty, and even though the restitution order resulted in a deprivation of property, Plaintiff's due process claims are " not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990).

a.      <u>due process at the misconduct hearing</u>

Due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false.  The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980).  "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

- 14 -

The starting point for any discussion of the procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69.

There is no question that: (1) Plaintiff received adequate written notice of charges for fighting and possession of a weapon; (2) Plaintiff was permitted to be heard; and (3) Plaintiff was provided with a written statement of the evidence relied upon and reasons for the disciplinary action. In an attempt to detract from the sufficiency of the process he was afforded, Plaintiff attempts to recast the charge. Plaintiff claims the only way he could be made to pay for prisoner Jackson's stabbing injuries financially or by an extended stay in segregation would be if he were found guilty of a different charge: assault resulting in serious physical injury. MDOC Policy Directive 03.03.105A, eff. 07/03/2015 ("Physical attack on another person which resulted or was intended to result in serious physical injury. Serious physical injury means any injury which would ordinarily require medical treatment."). Because he was not provided notice of such a charge or an opportunity to defend against such a charge, Plaintiff reasons he was denied due process.

Plaintiff's argument is flawed in its premise. He offers no support for his claim that only charges of assault resulting in serious physical injury may yield restitution orders or sufficiently evidence danger so as to warrant longer stays in segregation. There is nothing in the MDOC's

disciplinary policy to support such a limitation.  To the contrary, the policy directive regarding discipline permits the imposition of a restitution sanction for any Class I misconduct.  MDOC Policy Directive 03.03.105D, eff. 04/11/2014.   Similarly, the MDOC permits classification to administrative segregation where "[t]he prisoner is a serious threat to the physical safety of staff or other prisoners . . . ."  MDOC Policy Directive 04.05.120 ¶L, eff. 09/27/2010.  It is not limited to "threats" from one particular charge of violent misconduct.

In short, Plaintiff has received all the process he was due on the charges that resulted in findings of guilt that resulted in deprivations of property or deprivations of liberty (if, indeed, there were any such deprivations).  Plaintiff's argument that he did not receive notice or an opportunity to defend against other charges is immaterial and frivolous.

b.      due process before funds are removed

Plaintiff alleges that he filed a grievance against URF personnel for removing funds from his prisoner account.  To the extent Plaintiff is challenging that removal separate and apart from the order of restitution, that claim is also frivolous.  MDOC Policy Directive 04.02.105 requires a fact-finding hearing before funds are removed from a prisoner's account:

Removal of Funds from Prisoner Trust Accounts

T.      A fact-finding hearing shall be conducted pursuant to Administrative Rule 791.3310 by a facility hearing officer before funds are removed from a prisoner's trust account, *except* when due to one or more of the following:

* * *

3.      *An order to pay restitution issued by a hearing officer for a major or minor misconduct.*

MDOC Policy Directive 04.02.105, ¶T (emphasis added).  The directive, clearly does not apply to Plaintiff's situation because he was ordered to pay restitution by a hearing officer for his major

- 16 -

misconduct convictions.  *See* MDOC Policy Directive 03.03.105D, eff. 04/09/2012 (permitting hearing officers to order restitution for a Class I Misconduct).

The potential sanction of restitution is disclosed in the MDOC policy directive regarding prisoner discipline.  MDOC Policy Directive 03.03.105 (effective April 9, 2010), Attachment D Disciplinary Sanctions, clearly states that restitution is one of four sanctions the hearing officer may impose upon a finding of guilt for a Class I Misconduct.  Plaintiff does not dispute he had notice of the Fighting and Possession of a Weapon misconducts.  That was all the notice necessary for the sanction of restitution and the removal of funds from Plaintiff's account.

c.      due process in subsequent periodic reviews

The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of . . . inmates [in segregation]." *Hewitt,* 459 U.S. at 477 n.9. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements."  *Id.*  However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985).  "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis."  *Harris,* 465 F. App'x at 484.  In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559-60 (holding that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

In Plaintiff's complaint, he carefully chronicles the periodic Security Classification Committee (SCC) reviews that kept him in segregation. (Compl., ECF No. 1, PageID.7 at ¶12; 10 at ¶¶23, 24; 13 at ¶33; 16 at ¶42.) In each instance, Plaintiff was provided notice, permitted to participate, and he was told he was being kept in segregation because of the danger evidenced by his violent encounter with prisoner Jackson on August 13, 2016. Because Plaintiff attaches the misconduct report and the misconduct hearing report to his complaint, there can be no question that each SCC had "some evidence" to support its decision.

Plaintiff has failed to identify a defect in the process afforded him with respect to his continued classification to administrative segregation.

> D.   Transfer to ECF administrative segregation in retaliation for filing grievances.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

On September 26, 2016, Plaintiff filed a grievance against the URF SCC for failing to follow policy when classifying Plaintiff to segregation while he was on a mental health active caseload. Plaintiff contends that in retaliation for that grievance, on October 4, 2016, he was

- 18 -

transferred to administrative segregation at ECF.  After Plaintiff returned to URF for criminal

proceedings, on November 3, 2016, Plaintiff filed a grievance against URF personnel for removing

funds from his account pursuant to the restitution sanction from his August misconduct.  Plaintiff

contends that in retaliation for that grievance, he was, once again, transferred to administrative

segregation at ECF.  Plaintiff fails to state a claim for First Amendment retaliation with respect to

either transfer.

The filing of a prison grievance is constitutionally protected conduct for which a

prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.

2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v.

Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).[2]  Even if it were true that

Defendants retaliated against Plaintiff for filing grievances by transferring Plaintiff from segregation

at URF to segregation at ECF, such a transfer cannot be considered sufficiently adverse to act as a

deterrent.  "Since prisoners are expected to endure more than the average citizen, and since transfers

are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness

from continuing to engage in protected conduct."  *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir.

2005).  *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison

to another prison cannot rise to the level of an adverse action because it would not deter a person

of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks

omitted).

---

[2]Filing a grievance is not protected conduct, however, if the grievance is frivolous.  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).  Plaintiff's November 3, 2016 grievance regarding removal of money from his account without notice was frivolous on its face.  It is premised on Plaintiff's misguided notion that he cannot be held responsible for medical costs incurred to address the injuries suffered by prisoner Jackson during his fight with Plaintiff.  Plaintiff's position is meritless.  *See* § II.C.2.a. and b., *infra*.

- 19 -

Certainly, some transfers are more adverse than others. If a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (holding that transfer to administrative segregation or another prison's lock-down unit or can be sufficient to constitute adverse action); *Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill*, 630 F.3d at 468.

But a retaliatory transfer to administrative segregation at another prison can only be adverse in the same way that transfer to administrative segregation at the same prison would be: if it represents a meaningful change in circumstance. Where one is simply transferring from a circumstance in one prison (be it general population or segregation) to the same circumstance in another, it does not rise to the level of adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. Accordingly, Plaintiff has failed to state a First Amendment claim for retaliation.[3]

---

[3]Plaintiff's claims also fail at the third step. Although he claims the first transfer to ECF was retaliatory for his September 26, 2016 grievance, he acknowledges that he was told he would be transferred on September 21, 2016, five days <u>before</u> the grievance. (Compl., ECF No. 1, PageID.7 at ¶12.) With respect to the second transfer to ECF, it is clear from Plaintiff's complaint that he was transferred back to URF for his criminal proceedings and transferred back immediately upon the completion of those proceedings. Nonetheless, to establish retaliatory intent, Plaintiff relies on a statement by Defendant LaLounde: "You still haven't learned your lesson about filing grievances. That's exactly why you're going back to Oaks segregation." (*Id.*, PageID.12 at ¶ 27.) That statement does not necessarily evidence a retaliatory intent. In *Jewell v. Leronx*, 20 Fed. App'x. 375 (6th Cir. 2001), the Court of Appeals held that the transfer of an inmate to another prison in order to give the staff at the first prison a respite from his filing of grievances was not

- 20 -

E.    The conditions in segregation

The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To prove an Eighth Amendment violation, an inmate must show that he has been deprived of the minimum civilized measures of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Here, the aspects of Plaintiff's confinement that he contends render it cruel and unusual are the typical routine discomforts that follow from placement in a restrictive classification of administrative segregation, with two exceptions: the lack of running water in Plaintiff's cell from midnight to 6:30 a.m. from October 4 to November 1, 2016; and the failure to fix a broken light in Plaintiff's cell from November 15 to December 20, 2016.  Although these discomforts may be less routine, they do not represent the "extreme deprivations [that] are required to make out a conditions of confinement claim." *Hudson*, 503 at 9.  These discomforts were temporary in two respects:  they existed for only part of each day and for only a few weeks.  Such temporary deprivations, particularly where there is no allegation of resulting physical injury, are not denials of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (temporary deprivation of mattress and bedding); *Taylor v.*

---

a sufficiently adverse action under the *Thaddeus–X* test.  Other decisions such as *Mandela v. Campbell*, 181 F.3d 102 (6th Cir. May 26, 1999) (unreported) and *Herron v. Campbell*, 198 F.3d 245 (6th Cir. November 9, 1999) (unreported) reached a similar result.

*Larson*, 505 F. App'x 475, 478 (6th Cir. 2012) (temporary deprivation of toiletries); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (temporary deprivation of running water in cell); *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001) (temporary deprivation of working toilet).

### F.   Deliberate indifference to Plaintiff's psychiatric needs

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103-04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *id.* at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

- 23 -

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

The heart of Plaintiff's deliberate indifference claim is that the various SCC members failed to consult with a psychologist before they classified Plaintiff to segregation, as required by MDOC policy. (Compl., ECF No. 1, PageID.6 at ¶10, 7 at ¶¶12 and 14, 9 at ¶19, 10-11 at ¶24, 13 at ¶33.) Plaintiff also complains that all the mental health professionals with whom he consulted failed to have him removed from segregation. (*Id.*, PageID.6 at ¶11, 8 at ¶17, 9 at ¶19, 10 at ¶21, 16 at ¶40.) Plaintiff's allegations, perhaps unintentionally, reveal that he had regular contact with mental health professionals during his time in segregation at URF and at ECF. He saw his mental health case manager Ms. Chapman on September 15, 23, and 30; his mental health case manager Ms. Mucha on October 5 and 11; psychologist Carol Kenison on October 11; mental health unit chief

Majercyzk on October 13 and 27, November 29, and January 17; and nurse Mase on December 15. Plaintiff also acknowledges that he was provided his psychiatric medications.

Plaintiff contends that his psychiatric condition makes segregation particularly difficult for him, but his suggestion that the Defendants were deliberately indifferent to his serious psychiatric needs really amounts to a complaint that they did not fill out the forms required by policy, they did not release him from segregation, and segregation does not afford him the same psychological programming opportunities that are available in general population. Plaintiff's claim is nothing more than a dispute over the adequacy of his treatment. That is insufficient to state an Eighth Amendment deliberate indifference claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed on grounds of immunity and for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  February 28, 2017                    /s/ Janet T. Neff
                                            Janet T. Neff
                                            United States District Judge